UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARIA MARRA,

Plaintiff,

vs. Case No. 3:12-cv-924-J-MCR

CAROLYN W. COLVIN,[1]
Commissioner of Social Security,

Defendant.
______________________________________/

**MEMORANDUM OPINION AND ORDER**[2]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for a period of Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on May 13, 2009, alleging a disability onset date of April 26, 2005. (Tr. 164-75). Plaintiff's claims were denied initially on and upon reconsideration. (Tr. 87-92). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was conducted on January 10, 2011. (Tr. 26-

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 14).

61). The ALJ ultimately found Plaintiff was not disabled in a decision dated January 28, 2011. (Tr. 10-20). Plaintiff requested review of the ALJ's decision and the Appeals Council denied the request on June 14, 2012. (Tr. 1, 5,160-63). Plaintiff timely filed his Complaint in this Court seeking judicial review of the Commissioner's decision. (Doc. 1).

## II. NATURE OF DISABILITY CLAIM

### A. Basis of Claimed Disability

Plaintiff claimed to be disabled since April 26, 2005 due to depression, fibromyalgia, bulging disks, degenerative disk disease, arthritis, swelling in the feet, numbness in arms and legs. (Tr. 172, 216).

### B. Summary of Evidence Before the ALJ

Plaintiff was forty-nine years old on the date of her hearing before the ALJ on January 10, 2011. (Tr. 28, 37). Plaintiff has a high school education and past relevant work experience as a customer service agent at Blue Cross Blue Shield. (Tr. 38). Plaintiff's medical history is discussed at length in the ALJ's decision and will be summarized herein.[3]

In February 2005, Plaintiff first sought treatment from Dr. John E. Carey, M.D. for central to lower back pain. (Tr. 304). An MRI performed on March 26, 2003 revealed multi-level cervical disc bulge, with cervical stenosis at the C5-C6 level. (Tr. 303, 305). At that time, Dr. Carey discussed the need for a non-contrast MRI of

---

[3] As Plaintiff's appeal deals exclusively with her lumbar degenerative disk disease and cervical spine degenerative disease, the Court will focus its summary of the medical records on evidence addressing those impairments.

Plaintiff's lumbar spine and scheduled a series of 3 cervical epidural steroid injections. (Tr. 305). In March 2005, Plaintiff began the series of successful cervical epidural steroid injections that concluded on April 5, 2005. (Tr. 295-300). At the time of Plaintiff's last cervical injection, she was instructed to return in 4 weeks for re-evaluation to assess long term response to the treatments. (Tr. 295). The record is devoid as to whether Plaintiff returned for her follow-up visit and indicates no further complaints of lumbar or cervical issues until Plaintiff filed her application for disability benefits on May 13, 2009. (Tr. 164).

In July 2009, Plaintiff underwent a consultative examination, where the examining physician noted that Plaintiff had full range of motion in her cervical spine with some pain on lateral moves. (Tr. 313). The physician also noted that Plaintiff's extremities seemed normal, her grip and arm strength was a five out of five, she had no muscular wasting, and her cervical and lumbar spine, shoulders, elbows, wrists, and hands all had normal range of motion. (Tr. 313-15).

In August and December 2009, Plaintiff's lumbar and cervical spine RFC assessments established no limitations in Plaintiff's ability to reach, handle, finger, or feel, but did establish some exertional and environmental limitations. (Tr. 325-32, 351-58). In addition, Plaintiff's cervical spine assessment in September 2009, indicated that her symptoms were mild, and she did not wish to undergo surgical intervention. (Tr. 377).

In May 2010, Plaintiff complained of neck pain during an examination performed by Timothy Sternberg, M.D. at Shands Jacksonville. (Tr. 380). Dr. Sternberg indicated that Plaintiff had degenerative disk disease and facet hypertrophy of the cervical spine,

with canal stenosis greatest at C5-C6. (Tr. 383). Dr. Sternberg recommended Plaintiff take pain medication, participate in range-of-motion, aerobic, stretching exercises, and receive a cervical epidural steroid injection, which occurred in July 2010. (Tr. 378, 382-83).

**C. Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is performing substantial gainful activity, they are not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(a)(4)(i). Second, if a claimant does not have any impairment or combination of impairments, which significantly limit their physical or mental ability to do basic work activities, then they do not have a severe impairment and are not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(a)(4)(ii), 416.921(a). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, they are disabled. 20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii). Fourth, if a claimant's impairments do not prevent them from doing past relevant work, they are not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(a)(4)(iv). Fifth, if a claimant's impairments (considering their residual functional capacity, age, education, and past work) prevent them from doing other work that exists in the national economy, then they are disabled. 20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(v). Plaintiff bears the burden of persuasion through step

four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 26, 2005. (Tr. 12). At step two, the ALJ found Plaintiff's severe impairments included cervical spine degenerative disease and depression. Id. At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13-14). The ALJ next found Plaintiff had the residual functional capacity ("RFC")[4] to perform a reduced range of light work with additional limitations as defined in 20 C.F.R. 404.1567(b) and 416.967(b).[5] Specifically, the ALJ found Plaintiff could:

> lift and carry 20 pounds occasionally and 10 pounds frequently, and to stand and walk 6 hours in an 8-hour workday. [Plaintiff] can occasionally climb stairs, balance, stoop, kneel, and crouch and never climb ropes, ladders, and scaffolds or crawl. [Plaintiff] must avoid concentrated exposure to extreme cold, wetness, noise, fumes, odors dust, gases, extreme heat, vibration and hazards such as machinery and heights. Additionally [Plaintiff] is limited to simple, routine, repetitive tasks involving up to 3-step commands.

---

[4] The residual functional capacity is the most an individual can do despite the combined effect of all of their credible limitations. 20 C.F.R. §§ 404.1545, 416.945. The residual functional capacity is based on all of the relevant evidence in the case record, and is assessed at step four of the sequential evaluation. Id.

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b)..

(Tr. 14-18). In making this conclusion, the ALJ determined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent they [were] inconsistent with the above residual functional capacity." (Tr. 16).

Based on the RFC, the ALJ found that at step four, Plaintiff was not able to perform her past relevant work. (Tr. 18-19). Therefore, the ALJ proceeded to step five where he sought the advice of a vocational expert ("VE") to determine whether Plaintiff's age, education, work experience, and residual functional capacity, along with the other additional limitations, shifted Plaintiff's condition into the disabled category. (Tr. 19-20). The ALJ, with the assistance of the VE's testimony, determined that Plaintiff was not disabled because "[Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 20).

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant

evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**B. Issues on Appeal**

Plaintiff argues the following two issues on appeal: (1) whether the ALJ erred by failing to find that Plaintiff's lumbar disc disease constitutes a severe impairment and by failing to include limitations from that impairment in the hypothetical posed to the VE; and (2) whether the ALJ erred in failing to include limitations in Plaintiff's ability to reach, feel, handle, and finger in the hypothetical posed to the VE. (Doc. 18, pp. 4-8).

**1. Whether the ALJ erred in failing to find Plaintiff's lumbar disc disease constitutes a severe impairment.**

Plaintiff contends the ALJ erred by failing to find her lumbar disease a severe impairment at step two of his evaluation. (Doc. 18, p.6 ). The Commissioner responds that the ALJ did not err because he is not required to identify all of the impairments that

should be considered severe. In addition, the Commissioner argues Plaintiff failed to prove her lumbar disc disease significantly limited her ability to do basic work activities. (Doc. 20, pp. 5-6).

At step two of the sequential evaluation process, the claimant bears the burden of proving the existence of a severe impairment by showing "[she] has an impairment or combination of impairments which significantly limits the abilities and aptitudes necessary to do most jobs." See Yuckert, 482 U.S. at 146; 20 C.F.R. §§ 404.1520(c), 416.921(a). Additionally, to be eligible for disability benefits or supplemental security income, the impairment must have lasted or be expected to last for a continuous period of 12 months. 20 C.F.R. § 404.1505, 404.1509 and 416. 905(a). Substantial evidence that supports an ALJ's finding that the impairment has not or will not impose vocationally-restrictive limitations for a period of 12 months, is enough evidence for the ALJ to find an impairment non-severe. Burgin v. Comm'r of Soc. Sec., 420 F. App'x 901, 903 (11th Cir. 2011). Notably, the "'severity' of an ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1988); see also 20 C.F.R. § 416.920(c) ("If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment . . ."); and Social Security Ruling ("SSR") 96-3p (in considering an alleged impairment, the ALJ must evaluate evidence about its "functionally limiting effects" to determine how it affects the claimant's ability to do basic work activities).

However, at step two, the ALJ is not required to identify all of the impairments

that should be considered severe. See Heatly v. Commissioner of Social Sec., 382 F. App'x 823, 825 (11th Cir. 2010). Instead, the only requirement of step two is to identify if a severe impairment does in fact exist. Id. In addition, the ALJ's exclusion of an alleged impairment at step two, which could be classified as severe, is harmless if the ALJ finds even one severe impairment to exist and considers the non-severe impairments in later steps of the process. Id. at 824; see Burgin, 420 F. App'x at 903 (holding the ALJ's finding that certain impairments were not severe was harmless because the ALJ considered all the plaintiff's impairments in combination at later steps in the process).

Here, the Court finds no error in the ALJ's step two analysis. The ALJ found Plaintiff's severe impairments included cervical spine degenerative disease and depression. (Tr. 12). While it is true the ALJ did not classify Plaintiff's lumbar degenerative disk disease as a severe impairment, the ALJ found at least one of Plaintiff's impairments to be severe, which is all that is required at step two. Id. In any event, Plaintiff has failed to provide any substantive evidence that indicates limitations on her ability to work arising from her lumbar disease, which are not already included in the RFC established by the ALJ. As noted above, it is Plaintiff's burden to prove the existence of a severe impairment and she must do that by showing an impact on her ability to work. Yuckert, 482 U.S. at 146; McCruter, 791 F.2d at 1547. Plaintiff failed to meet the requisite burden.

On March 3, 2005, an MRI was performed on Plaintiff's lumbar spine which indicated no evidence of focal disk herniation, spinal stenosis or significant osseous lesion. (Tr. 299). Subsequent to the review of her MRI in 2005, Plaintiff underwent no

further treatment or examinations for her lumbar spine until May 2009, where x-ray's indicated that the lumbar spine was normal. (Tr. 410). An MRI performed in July 2009 also appeared normal. (Tr. 406).

In addition, as noted by the ALJ, from April 2005 to July 2009, Plaintiff was able to work as a waitress, which she stopped because "she was not making any money." She also was able to perform tasks such as caring for an elderly man, cooking, doing laundry, walking to the shopping center, shopping, housecleaning, and pulling weeds. (Tr. 17, 193, 232-44). When considering the objective medical evidence and Plaintiff's activities of daily living, the undersigned concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's lumbar degenerative disk disease does not constitute a severe impairment.

Furthermore, the alleged impairments caused by Plaintiff's degenerative disk disease do not meet the requisite durational requirements to be considered a disability. 20 C.F.R. §§ 404.1505, 416.905(a) defines a disability as follows:

> [T]he inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

Evidence that supports an ALJ's finding that the impairment has not or will not impose vocationally-restrictive limitations for a period of 12 months, is substantial enough for the ALJ to find an impairment non-severe. Burgin v. Comm'r of Soc. Sec., 420 F. App'x 901, 903 (11th Cir. 2011). Here, according to the medical records, Plaintiff first sought treatment for her lumbar degenerative disk disease on March 3, 2005, and treatment was concluded in April 2005. (Tr. 295, 299). Plaintiff provides no evidence, subsequent

to April 5, 2005, that indicates any vocational limitations stemming from her lumbar degenerative disk disease. As previously noted, Plaintiff worked and performed a variety of activities subsequent to April 5, 2005 and received no further treatment for her lumbar degenerative disk disease. Notably, after Plaintiff filed her claim on May 13, 2009, examinations performed by Shands Jacksonville in May and July of 2009 continued to indicate normality of the lumbar spine. (Tr. 173, 406, 410). Thus, it appears from the record that Plaintiff's symptoms from her lumbar degenerative disk disease diminished in April 2005.

In light of the foregoing, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's lumbar degenerative disk disease does not constitute a severe impairment and finds is no error in the ALJ's analysis at step two of the sequential evaluation process.

**2. Whether the ALJ erred by failing to limitations in Plaintiff's ability to reach, feel, handle, and finger in the hypothetical posed to the VE.**

Next, Plaintiff argues that the ALJ erred in failing to include limitations from her cervical spine degenerative disc disease in the hypotheticals posed to the VE. Specifically, Plaintiff contends the ALJ failed to include limitations in her ability to reach, feel, and finger. (Doc. 18, p. 6). The Commissioner responds that Plaintiff cites to no evidence supporting her alleged limitations in reaching, handling, fingering, and feeling. (Doc. 20, p. 10).

At step four of the sequential evaluation process, the ALJ must first determine Plaintiff's RFC. 20 CFR § 404.1520(e), 404.1546(c), 416.920(e). "The [RFC] is an assessment, based upon all of the relevant evidence, of a [plaintiff's] remaining ability to

do work despite his impairments." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). Once an RFC is established, Plaintiff carries the burden to prove she is unable to perform her past relevant work. See Lucas v. Sullivan, 918 F.2d 1567, 1571 (11th Cir. 1990) (citing Cannon v. Bowen, 858 F.2d 1541, 1544 (11th Cir. 1988)). In the instant case, Plaintiff proved to the ALJ that she was unable to perform her past relevant work. (Tr. 18-19).

Therefore, at step five, the Commissioner boar the burden to prove there was other work in significant numbers in the national economy that Plaintiff was able to perform. Conner v. Astrue, 415 F. App'x 992, 995 (11th Cir. 2011); 20 C.F.R. §§ 404.1566(a)-(b), 416.960(c). To meet this burden, testimony from a VE is "highly valued and commonly obtained in order to establish the availability of suitable alternative jobs for disability [plaintiffs]." Holley v. Chater, 931 F. Supp. 840, 851 (S.D. Fla. 1996)(citing Decker v. Harris, 647 F.2d 291, 298 (2d Cir. 1981)). When using a VE, the ALJ must pose a hypothetical question to the vocational expert which describes the Plaintiff's impairments. See Pendley v. Heckler, 767 F.2d 1561, 1563, 10 Soc. Sec. Rep. Serv. 261 (11th Cir. 1985); Wilson v. Barnhard, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing Jones v. Apfel, 190 F.3d 1224, 1230 (11th Cir. 1999), cert. denied, 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000)). However, hypothetical questions have been deemed adequate where they specifically reference the claimant's impairments as demonstrated by the medical evidence or where they are not significant enough to affect the plaintiff's ability to work. Carter v. Comm'r of Soc. Sec., 411 Fed. Appx. 295, 298 (11th Cir. 2011); see also Bouie v. Astrue, 226 F. App'x. 892, 894 (11th Cir. 2007) (quoting Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir.

2004)) (holding ALJ was not required to include limitations in the hypothetical posed to the VE which were not supported by the record). Notably, once the Commissioner demonstrates that there are other jobs Plaintiff can perform, the burden shifts back to Plaintiff to prove she is unable to perform the jobs demonstrated. Conner, 415 F. App'x at 995.

Here, the ALJ determined Plaintiff had a RFC to perform a reduced range of light work. (Tr. 13-18). Subsequently, considering Plaintiff's age, education, work experience, and RFC, along with the testimony of the VE, the ALJ determined that other work existed in significant numbers as a marker, an assembler electrical accessories I, and a router clerk, which Plaintiff could perform. (Tr. 19-20). The ALJ specifically accounted for Plaintiff's limitations in his hypothetical when he noted that Plaintiff was capable of light work with additional limitations. (Tr. 14-18, 56). Therefore, Plaintiff boar the burden to show her alleged limitations prevented her from performing the occupations determined by the ALJ. Plaintiff has not met her burden because the record lacks sufficient objective evidence that supports Plaintiff's alleged limitations in her ability to reach, handle, finger, or feel. Contrary to Plaintiff's assertions, an examination performed by a treating physician at Jacksonville Spine Center on February 21, 2005, indicated that Plaintiff had a full range of motion in her right and left upper extremity. (Tr. 304). Further, the physician noted that Plaintiff elicited no pain with external rotation and abduction of her shoulders. Id.

Additionally, in a consultative exam performed on July 20, 2009, the examining physician noted Plaintiff's grip and arm strength were a five out of five, in addition to no muscular wasting. (Tr. 313). A corresponding range of motion report further indicated

that Plaintiff's shoulder, elbow, wrist, and hand, all had normal range of motion. (Tr. 315). As noted by the ALJ, the physician also indicated that Plaintiff had good sensation in her upper and lower extremities, normal reflexes, and no weakness of motor functions. (Tr. 15, 313-14). While a physical RFC assessment of Plaintiff's cervical spine indicated numbness in her arms and legs, the medical consultant established no limitations in Plaintiff's ability to reach, handle, finger, or feel. (Tr. 351-58). However, the record is not devoid of some evidence regarding Plaintiff's alleged limitations. Specifically, examinations performed on September 8, 2009, May 3, 2010, and July 15, 2010, indicate Plaintiff suffered some neck pain that radiated to the bilateral and upper extremities. (Tr. 376-84). However, the physician noted Plaintiff's symptoms as mild and she was instructed to "participate in range-of-motion, aerobic, and stretching exercises" and undergo an epidural to alleviate any associated pain, which the ALJ noted. (Tr. 376-84).

The record indicates that the ALJ considered all of the aforementioned evidence in his RFC assessment and determined that Plaintiff's statements concerning her limiting effects were not substantiated by the medical evidence. (Tr. 16). While the ALJ did not specifically state which limitations he included to reach his RFC, he relied on all the relevant evidence to make his determination, which is all that is required. (Tr.14-18); see Freeman v. Barnhart, 220 Fed. Appx. 960 (11th Cir. 2007) (holding that while the ALJ could have been more specific in his findings, he did consider all the evidence, which did not support the level of disability asserted by the claimant).[6]

---

[6] Further, the Court notes that the ALJ posed a second hypothetical to the VE proposing the following: "[l]et's assume the same hypothetical I just gave you but let's add to

In light of the foregoing, the undersigned concludes that substantial evidence supports the ALJ's assessment of Plaintiff's RFC and his finding that she could perform other work and was not disabled.

## IV. CONCLUSION

Upon due consideration, the Court finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. As neither reversal nor remand is warranted in this case, and for the aforementioned reasons, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.

**DONE AND ORDERED** in Jacksonville, Florida this 29th day of July, 2013.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of record

---

that one ... [o]ccasional reaching, handling, fingering, and feeling. Still can't do the past work. Any other work existing in the national and Florida economies?" (Tr. 59). The VE testified that there existed other work as a surveillance system monitor or tube operator that Plaintiff could perform despite adding limitations in her ability to reach, handle, finger, or feel. (Tr. 59-60).